IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) Civil Action No. 1:21-cv-1098 ) ) ) COMPLAINT AND ) JURY TRIAL DEMAND ) |
| v. | ) ) |
| PEOPLEREADY, INC. and TRUEBLUE, INC. | ) ) ) ) ) ) |
| Defendants. | ) ) |

## NATURE OF THE ACTION

This is an action under Title I and Title V of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices based on disability and retaliation and to provide appropriate relief to Charging Party Kaneia Jaime ("Jaime"), who was adversely affected by such practices. The U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant TrueBlue, Inc. and Defendant PeopleReady, Inc. violated the ADA when they denied Jaime reasonable accommodations, and upon Jaime's return to work from disability-related medical leave, immediately terminated her employment because of her disability and the need to accommodate her disability, anxiety and bipolar I disorder, and/or in retaliation for her requesting reasonable accommodations.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Virginia.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. TrueBlue, Inc. is a Washington state corporation headquartered in Tacoma, Washington, that has continuously had at least 15 employees.

5. At all relevant times, TrueBlue, Inc., has continuously been doing business in Manassas, Virginia, where the unlawful employment practices that are at issue in this lawsuit took place.

6. At all relevant times, TrueBlue, Inc., has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701 (b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

7. At all relevant times, TrueBlue, Inc., has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

8. PeopleReady, Inc., is a Washington state corporation headquartered in Tacoma, Washington, that has continuously had at least 15 employees.

9. At all relevant times, PeopleReady, Inc., has continuously been doing business in Manassas, Virginia, where the unlawful employment practices that are at issue in this lawsuit took place.

10. At all relevant times, PeopleReady, Inc., has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701 (b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

11. At all relevant times, PeopleReady, Inc., has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

12. PeopleReady, Inc. is a wholly owned subsidiary of TrueBlue, Inc.

13. During the relevant time period, TrueBlue, Inc. has exercised control and direction of PeopleReady, Inc.'s human resources and labor relations functions, including by:

   a) formulating and administering PeopleReady, Inc.'s personnel policies and procedures, including those that relate to disability discrimination;

   b) administering PeopleReady, Inc.'s employee benefits, including those related to medical leave;

   c) deciding whether to grant the medical leave requests of PeopleReady, Inc. employees, and/or advising PeopleReady, Inc. on such requests;

    d) deciding whether to grant ADA reasonable accommodation requests of PeopleReady, Inc. employees, and/or advising PeopleReady, Inc. on such requests;

    e) deciding whether to terminate PeopleReady, Inc. employees who have exhausted medical leave, and/or advising PeopleReady, Inc. on such decisions;

    f) formulating the position descriptions that define the essential job functions of PeopleReady, Inc. employees; and

    g) responding to EEOC Charges filed by PeopleReady, Inc. employees and participating in the investigations and conciliations of such Charges.

14. PeopleReady, Inc.'s actions constituting the alleged violations of the ADA, alleged herein, were taken at the direction of and/or in consultation with TrueBlue, Inc.

15. TrueBlue, Inc. and PeopleReady, Inc. (herein collectively "Defendant") are a joint and/or single employer under the ADA.

## ADMINISTRATIVE PROCEDURES

16. More than thirty days prior to the institution of this lawsuit, Charging Party Kaneia Jaime, a former employee of Defendant, filed a Charge of Discrimination with the Commission alleging that she had been denied medical leave as a reasonable accommodation and unlawfully terminated by Defendant in violation of the ADA. TrueBlue, Inc. responded to Jaime's Charge of Discrimination on behalf of its subsidiary PeopleReady, Inc., and participated in all aspects of the administrative investigation.

17. On July 9, 2021, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant had violated the ADA by discriminating against Jaime because of her disability, and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate

relief.

18. After issuing the Letter of Determination, the EEOC engaged in communications with Defendant to provide it the opportunity to remedy the unlawful employment practices described in the Letter of Determination.

19. On August 24, 2021, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

20. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

21. At all relevant times, Kaneia Jaime was an individual with an actual disability as defined by the ADA.

22. At all relevant times, Jaime was diagnosed with anxiety and bipolar I disorder, which caused her to experience anxiety and episodes of mania, psychosis, and depression.

23. At all relevant times, and as a result of her disability, Jaime was substantially limited in major life activities, including but not limited to, thinking, concentrating, communicating, sleeping, interacting with others, and brain function.

24. Jaime's diagnosis was documented in medical records, and she discussed her diagnosis with her direct supervisor, Kevin Lewicki ("Lewicki"), and her co-workers.

25. Defendant hired Jaime in late February 2018 at PeopleReady, Inc.'s Manassas, Virginia, branch office as a Market Recruiting Coordinator, and she began work in March 2018.

26. At all relevant times, the essential functions of the Market Recruiting Coordinator at its Manassas, Virginia, branch office involved responding to customer inquiries, attending job fairs, and recruiting, screening, and interviewing job candidates to fulfill customer staffing requests.

27. At all relevant times, Jaime was able to perform the essential functions of the Market Recruiting Coordinator position, including but not limited to those delineated above, with or without reasonable accommodations.

28. At all relevant times, Jaime performed her duties in a satisfactory manner and at no time did Defendant discipline her for any work performance issue under its progressive discipline policy.

29. On or around August 29, 2018, Jaime was admitted to the hospital due to psychiatric illness.

30. On or around the morning of August 30, 2018, Jaime's husband called Lewicki, Jaime's direct supervisor, and notified him that Jaime was in the hospital and would not be reporting to work. Later that day, Lewicki emailed Defendant's Leave Administration Office stating that Jaime's husband called him, and that Jaime "had a break down and [wa]s in the hospital for treatment."

31. When Jaime was discharged from the hospital, on or around September 11, 2018, her treating physician submitted to Defendant its required Health Care Provider Statement of Medical Release to Return to Work form, stating that Jaime could return to work on September 24, 2018, without restrictions.

32. Defendant approved Jaime's medical leave for the period of August 30, 2018, through September 23, 2018. Jaime was on approved leave during this period.

33. On or around September 24, 2018 Jaime returned to the office and told Lewicki that she had been diagnosed with bipolar I disorder. Jaime also told her co-workers about her diagnosis.

34. Sometime shortly after Jaime received her bipolar diagnosis and disclosed her disability at work, Defendant's Assistant Manager at the Manassas, Virginia, branch office, David Hatch, approached Jaime and made a statement to the effect of "people in the office are uncomfortable working with you because of your condition."

35. On November 8, 2018, shortly after arriving at work, Jaime began to experience anxiety and suffered a manic episode from her bipolar disorder. She informed Lewicki that she was experiencing anxiety and needed to go home. Lewicki responded with a statement to the effect of "ok," and Jaime left work roughly one hour after she arrived.

36. The following morning, on November 9, 2018, shortly after arriving at work, Jaime began to experience anxiety and suffered a manic episode from her bipolar disorder. During this manic episode, Jaime was unable to remember her log-in credentials and as a symptom of her bipolar I disorder, became fearful of a job applicant who was present in the office. She informed Lewicki that she was experiencing anxiety and needed to go home. Lewicki responded with a statement to the effect of "ok," and Jaime left work several minutes after she arrived.

37. That same day, November 9, 2018, Defendant drafted a written notice or Performance Discussion Record ("PDR"), in which it issued Jaime a final warning. The PDR cited Jaime with the following performance issue: "Attendance/Punctuality," and identified three absences as the reason for discipline, two of which were Jaime's November 8, 2018 and November 9, 2018 disability-related absences. At no time did Defendant ask Jaime to provide medical documentation regarding her November 8, 2018 and November 9, 2018 absences, and at no time did Defendant engage in the interactive process regarding these absences. The PDR was never shown to or discussed with Jaime, and it was not signed by either Defendant or Jaime.

38. On or around November 11, 2018, Jaime was admitted to the hospital for symptoms related to her bipolar I disorder. She remained at the hospital and continued to receive treatment for her disability until on or around November 19, 2018.

39. On or around November 12, 2018, Jaime's husband called Lewicki to inform him that Jaime had been admitted to the hospital.

7

40. On November 13, 2018, Lewicki emailed Defendant's Senior Human Resources Business Partner, Diana Ritter ("Ritter"), stating that Jaime was in the hospital for depression and required leave.

41. Some time after Jaime was hospitalized for her disability, Danitra Lemmon, a Staffing Specialist at Defendant's Manassas, Virginia, branch office, heard Lewicki make a comment to the effect of "Kaye is going to the loony bin."

42. On November 13, 2018, Defendant's Leave Administration Office contacted Jaime to notify her that it was aware of her need for leave and informed her that both she and her medical provider must submit additional information to support her request for leave.

43. On November 19, 2018, Jaime's treating physician submitted the required medical provider forms to Defendant and indicated that Jaime could return to work without restrictions on November 29, 2018 and would require ongoing leave of one to three hours, one to three times per month, to attend outpatient appointments.

44. On or around November 20, 2018, Jaime submitted the required employee Leave of Absence Request Form to Defendant, in which she indicated that she required medical leave from November 12, 2018 to November 29, 2018, for her own serious health condition.

45. On November 26, 2018, Defendant's Leave Administration Office contacted Jaime and notified her that her request for medical leave from November 12, 2018 to November 29, 2018, was approved. Defendant did not respond to, or engage in any interactive process, regarding Jaime's request for future intermittent leave as a reasonable accommodation.

46. On November 27, 2018, Lewicki emailed Ritter asking, "Where do I stand with my problem child[]? Are we terminati[ng] Kaniea Jaime this week?"

47. Later that day, on November 27, 2018, Defendant's Leave Administration Office

8

informed Ritter that Jaime's November 12, 2018 to November 29, 2018 medical leave request had been approved.

48. On or around November 28, 2018 Ritter emailed Lewicki instructions to terminate Jaime, stating "[t]ermination is based on Medical Leave not approved and not being able to make accommodations of needed time off."

49. On November 29, 2018, Jaime returned to work following the conclusion of her medical leave.

50. On November 29, 2018, Defendant, without notice, rescinded its approval of Jamie's November 12, 2018, to November 29, 2018, medical leave.

51. On November 29, 2018, Defendant terminated Jaime's employment immediately upon her return to the office, without discussing any of her accommodation requests.

52. Since at least November 2018, Defendant engaged in unlawful employment practices in violation of Sections 102(a) and (b)(5)(A), (B) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(A), (B), by failing to provide Jaime with reasonable accommodation for her disability; and by terminating her because of her disability, based on the need to make reasonable accommodations, and/or in retaliation for her requesting reasonable accommodations.

53. The effect of the practices complained of in paragraph 52 above has been to deprive Jaime of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

54. The effect of the practices complained of in paragraph 52 above has been to deprive Jaime of equal employment opportunities and otherwise adversely affect her rights under the ADA resulting in lost wages, emotional pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life, because of her disability.

55. The effect of the practices complained of in paragraph 52 above has been to deprive Jaime of equal employment opportunities and otherwise adversely affect her status as an employee because she exercised her rights under the ADA by making a request for a reasonable accommodation.

56. The unlawful employment practices complained of in paragraph 52 above were intentional.

57. The unlawful employment practices complained of in paragraph 52 above were done with malice or with reckless indifference to the federally protected rights of Jaime.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from refusing to reasonably accommodate any individual with a disability and from engaging in any employment practice which discriminates on the basis of a disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to implement non-discriminatory objectives, written policies and practices regarding the terms and conditions of employment and sign and conspicuously post, for a designated period of time, a notice to all employees that sets forth the remedial action required by the Court and informs all employees that Defendant will not discriminate against any employee because of a disability, including that it will comply with all aspects of the ADA.

D. Order Defendant to make Jaime whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary

to eradicate the effects of its unlawful employment practices, including, but not limited to, front pay and reinstatement.

E.    Order Defendant to make Jaime whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, including but not limited to any job search expenses and medical expenses, and other pecuniary losses, in amounts to be determined at trial.

F.    Order Defendant to make Jaime whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of herein, including emotional pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

G.    Order Defendant to pay Jaime punitive damages for its malicious and reckless conduct described herein, in amounts to be determined at trial.

H.    Grant such further relief as the Court deems necessary and proper.

I.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
General Counsel

DEBRA M. LAWRENCE
Regional Attorney

_____/s/_____
MARIA LUISA MOROCCO
Supervisory Trial Attorney

Va. Bar I.D. 94043
Attorney for Plaintiff
U.S. Equal Employment Opportunity Commission
Washington Field Office
131 M St., NE
Suite 4NW02F
Washington, DC 20507
Phone: (202) 921-2795
Fax:    (202) 827-2349
Maria.Morocco@eeoc.gov


ASHLEY M. MARTIN
Trial Attorney
U.S. Equal Employment Opportunity Commission
Washington Field Office
131 M St., NE
Suite 4NW02F
Washington, DC 20507
Phone: (202) 921-2766
Fax:    (202) 827-2349
Ashley.Martin@eeoc.gov

ATTORNEYS FOR PLAINTIFF